No. 89-526

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

ELWOOD W. CLEASBY d/b/a WESTERN
HERITAGE and MARGE M. CLEASBY,

            Plaintiffs and Appellants,

      v.

SECURITY FEDERAL SAVINGS BANK, a/k/a
SECURITY FEDERAL SAVINGS AND LOAN
ASSOCIATION, a Banking Corporation,
and JAMES E. HIGGENBOTHAM,

            Defendants and Respondents.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
                In and for the County of Yellowstone
                The Honorable Todd G. Baugh, Judge presiding.

COUNSEL OF RECORD:

        For Appellants:

            Don Vernay, Attorney at Law, Kalispell, Montana

        For Respondents:

            Jon T. Drye, Attorney at Law, Billings, Montana

Submitted on briefs:    4/12/90

Decided:    June 28, 1990

Filed:

_____
Clerk

Justice John C. Sheehy delivered the Opinion of the Court.

Plaintiffs (Cleasbys) appeal from an order of the Thirteenth Judicial District, Yellowstone County, granting defendants' motion for partial summary judgment. We affirm the District Court's order.

The Cleasbys raise two issues on appeal:

(1) Whether the Cleasbys' failure to adequately disclose the existence of claims against Security Federal in the bankruptcy proceeding estops them from now pursuing those claims.

(2) Whether the Cleasbys' claims are barred by the doctrine of res judicata.

On June 3, 1988, the Cleasbys filed a complaint against Security Federal and James Higgenbotham alleging breach of contract, tortious interference with their business affairs, and a breach of the implied covenant of good faith and fair dealing. A review of the complaint shows that most of these allegations were grounded on events occurring in the spring and summer of 1986, prior to the Cleasbys filing for bankruptcy under Chapter 11 of the Bankruptcy Code.

According to the record, the Cleasbys filed their petition for a Chapter 11 reorganization on October 29, 1986. Attached to the bankruptcy petition was a list of personal property officially designated as "Schedule B-2." Part (q) of Schedule B-2 requests the debtor to list "contingent and unliquidated claims of every nature including counterclaims of the debtor." In response, the Cleasbys listed the following:

> Potential claim for bad faith or tortious interference against Security Federal Savings and Loan Association

The Cleasbys stated the value of their potential claim as "undetermined." Subsequent to the filing of the petition and the Schedule B-2, the Cleasbys prepared three disclosure statements and three bankruptcy plans. Each disclosure statement contained a list

2

of the debtors' assets, but the Cleasbys failed to mention the potential claim against Security Federal. The bankruptcy plan also specifically listed potential sources of revenue which could be used to pay creditors. Again, the Cleasbys' potential claim against Security Federal was not included in any of the three plans. Also the Cleasbys never disclosed, in the disclosure statements or the schedule of assets, their potential claims against co-defendant James Higgenbotham.

On October 12, 1987, Security Federal stipulated to the third bankruptcy plan filed by the Cleasbys. That stipulation provided that Security Federal's claims against the Cleasbys were "settled and satisfied." On October 26, 1987, the bankruptcy entered an order confirming the Cleasby's Chapter 11 plan.

As previously stated plaintiffs filed on June 3, 1988, their complaint against the defendants. Security Federal filed a motion for summary judgment arguing that the confirmation of the Chapter 11 bankruptcy plan now bars the Cleasbys' claims, which are based on events that took place prior to the Cleasbys' bankruptcy, under the doctrines of equitable estoppel, judicial estoppel and res judicata. The District Court agreed and found the Cleasbys barred by equitable estoppel and res judicata from bringing their claims in District Court. The Cleasbys now appeal the District Court order.

The effect of a debtor's failure to disclose potential lawsuits in a bankruptcy proceeding has been the subject of limited judicial review. The courts addressing this issue, however, found

3

that failure of a debtor to disclose a potential lawsuit in the bankruptcy proceeding prevents the debtor in possession from later maintaining that lawsuit. In Re Hoffman (N.D. Iowa 1989), 99 B.R. 929; Oneida Motor Freight, Inc. v. United Jersey Bank (3d Cir. 1988), 848 F.2d 414, cert.denied 109 S.Ct. 495, 102 L.Ed. 532 (1988); In Re Galerie Des Monnaies of Geneva, Ltd. (S.D. N.Y. 1986), 62 B.R. 224. The various legal theories employed by these courts to reach this conclusion include equitable estoppel, judicial estoppel, and res judicata.

In each of the above cited decisions, the debtors failed to provide any notice of claims or potential lawsuits in their bankruptcy plans. In the present case, the Cleasbys listed the potential claim against Security Federal in their B-2 schedule of assets. However, in three subsequent disclosure statements the Cleasbys did not provide any information regarding their counterclaim against Security Federal. The District Court held that the mere listing of a potential lawsuit in the schedule of assets was not adequate disclosure as required by the bankruptcy code. Thus, the District Court barred the Cleasbys' claims under the doctrine of equitable estoppel and res judicata.

I.

Whether the Cleasbys' failure to adequately disclose the existence of claims against Security Federal in the bankruptcy proceeding estops them from now pursuing those claims.

The doctrine of equitable estoppel is applied to promote justice, honesty, fair dealing and to prevent injustice. Keneco

4

v. Cantrell (1977), 174 Mont. 130, 135, 568 P.2d 1225, 1228. We have long held that equitable estoppel is founded in equity and good conscience. Its objective is to prevent a party from taking an unconscionable advantage of his own wrong while asserting his strict legal right. In the Matter of Shaw (1980), 189 Mont. 310, 316, 615 P.2d 910, 914; Leno v. General-Shea-Morrison (1955), 128 Mont. 570, 576, 280 P.2d 1086, 1090. The Court in Oneida, above, strictly applied these equitable principles to a debtor who failed to disclose the existence of a potential lawsuit in a prior bankruptcy proceeding. Oneida, 848 F.2d at 418. See also, In Re Hoffman (N.D. Iowa 1989), 99 B.R. 929.

In Oneida, a former Chapter 11 debtor brought suit against a bank for breach of contract, misrepresentation, and breach of the bank's duty of good faith. The plaintiff failed to disclose the lawsuit in the Chapter 11 proceeding. Because of this failure to disclose, the Court held that the subsequent lawsuit was barred by the doctrine of equitable estoppel:

> We can assume that revealing the potential action may also have impacted upon the bank's decision to enter into the stipulation establishing the extent and validity of its lien against Oneida [the debtor] and to vote for confirmation. The practical effect of a successful prosecution of Oneida's claim would be to require the bank to make restitution of the amount realized on its bankruptcy claim, since Oneida's present action calls into question the bank's right to collect its secured debt. This would also constitute a successful collateral attack on the Bankruptcy Court's order confirming the reorganization plan. In such circumstances, employment of equitable estoppel is required to preserve the integrity of the earlier proceeding, particularly where, as here, the creditors have reasonably acted in reliance upon the assumed finality and integrity of those adjudications. (Citations omitted.)

5

<u>Oneida</u>, 848 F.2d at 418.

Recently, in Mellem v. Kalispell Laundry (1989), 237 Mont. 439, 442, 774 P.2d 390, 392, we listed the following six elements of equitable estoppel:

1.   There must be conduct--acts, language, or silence--amounting to a representation or a concealment of material facts.

2.   These facts must be known to the party estopped at the time of his said conduct, or at least the circumstances must be such that knowledge of them is necessarily imputed to him.

3.   The truth concerning these facts must be unknown to the other party claiming the benefit of the estoppel, at the time when it was acted upon by him.

4.   The conduct must be done with the intention, or at least with the expectation, that it will be acted upon by the other party, or under such circumstances that it is both natural and probable that it will be so acted upon. . . .

5.   The conduct must be relied upon by the other party, and, thus relying, he must be led to act upon it.

6.   He must in fact act upon it in such a manner as to change his position for the worse. . . .

Security Federal contends the facts of <u>Oneida</u> and <u>Hoffman</u> and the instant case are similar, and thus, this Court should apply the doctrine of equitable estoppel as set forth in <u>Mellem</u>.  The Cleasbys attempt to distinguish the cases relied on by Security Federal by arguing that <u>Oneida</u> and <u>Hoffman</u> contained no disclosure whatsoever of the potential claims to the creditors during the

6

bankruptcy proceeding, whereas, the Cleasbys disclosed their potential claims against Security Federal in their petition for bankruptcy. The Cleasbys contend that listing claims with their schedule of assets provided Security Federal with sufficient notice to allow it to raise any questions or objections regarding the claim.

The question presented, then, is whether this initial disclosure was sufficient to escape a finding of "concealment" as required by the first element of equitable estoppel. Therefore, we must review the Bankruptcy Code's requirements of disclosure to determine whether the Cleasbys concealed their potential claim against Security Federal.

As the Court in Onieda properly notes, section 521 of the Bankruptcy Code list the debtor's duties in a bankruptcy case. The Code requires the debtor to "file a . . . schedule of assets and liabilities . . . and a statement of the debtor's financial affairs . . . ." 11 U.S.C. § 521(1); Oneida, 848 F.2d at 417.

The Cleasbys complied with § 521 and listed a "potential claim for bad faith or tortious interference against Security Federal Savings & Loan Association" in their schedule of assets. The Cleasbys contend that by listing the claim as an asset, they are excused from any further disclosure. The duty to list pending litigation as an asset is, however, only the first of the specific statutes mandating disclosure.

The second such statute is 11 U.S.C. § 1125(b), which mandates the filing of a disclosure statement containing "adequate

7

information."   Section 1125(a) defines adequate information as follows:

### § 1125.   Postpetition disclosure and solicitation

(a)   In this section -

(1)   "adequate information" means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor . . . that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan.

The importance of full disclosure is intensified by the reliance placed upon the disclosure statement by the creditors and the court.  Oneida, 848 F.2d at 417.  The duty to provide "adequate information" in the disclosure statement has been interpreted as requiring an explanation of pending or contemplated litigation. In Re Malek (Bkrtcy. Mich. 1983), 35 B.R. 443, 444; In Re Route 202 Corp. (Bkrtcy. Penn. 1984), 37 B.R. 367, 375-6.  The Court in Malek required the debtor to set forth the following information, regarding potential litigation, in the disclosure statement:

B.   A HISTORY OF THE DEBTOR PRIOR TO FILING.

The Chapter 11 Debtor should describe, in detail, his activities before filing, including the reasons for filing the Chapter 11.. . .  Litigation issues are to be described in an objective professional tone, free of any mischaracterization of the issues to be resolved in such litigation.   Where possible, the Debtor should provide an evaluation of the probable success of any litigation and its effects on the Debtor's business or his plans for reorganization under Chapter 11.

* * *

I.   LITIGATION

> All pending or contemplated litigation of whatever nature must be described fully, completely and in detail. . .

In Re Malek, 35 B.R. at 444.

The disclosure statement filed by the Cleasbys contained no reference to the contemplated suit against Security Federal. Clearly, the listing of potential litigation against Security Federal, especially a potential counterclaim, would have affected Security Federal's decision to approve or disapprove of the Cleasbys' bankruptcy plan. Considering the importance of the disclosure statement in the bankruptcy proceedings, we are not swayed by the Cleasbys' contention that merely listing the potential lawsuit in the schedule of assets was sufficient notice to preserve their lawsuit, and that they were not required to list the claim on their disclosure statement. The debtor must provide "adequate information" in order for creditor to make an informed decision on the bankruptcy plan. In this case, the Cleasbys were remiss in their duty to provide "adequate information" in their bankruptcy plan.

The Cleasbys attempt to excuse their failure to include the claim against Security Federal in the disclosure statement by arguing that the creditors had a duty to look beyond the disclosure statement, and reexamine the schedule of assets, thus discovering the reference to a "potential claim" against Security Federal. The Cleasbys' contention is in direct contradiction of the Bankruptcy Code's mandate to provide "adequate information" to the creditors. 11 U.S.C. § 1125(a), requires the debtor to provide "adequate information" in its plan. The Code does not require a creditor to

9

sift through the bankruptcy plan to find an inadequately potential described lawsuit.

The Cleasbys also argue that Security Federal had an affirmative duty to seek out additional information regarding their potential claim against Security Federal. Again, this argument contradicts the rule that the debtor in possession owes a fiduciary duty to the creditors, particularly with respect to assets of the bankruptcy estate. Natco Industries v. Federal Ins. Co. (S.D. N.Y. 1987), 69 B.R. 418, 419. The assets of the estate include any cause of action which has accrued to a debtor as of the filing of the bankruptcy petition. 11 U.S.C. § 541(a). The Cleasbys, as debtors in possession, had a fiduciary duty to safeguard the assets of the estate which include causes of action, and had a statutory obligation to identify fully the claims against Security Federal. Under the Bankruptcy Code, reorganization is dependent upon the debtor's full disclosure of all relevant information. The Bankruptcy Code and the courts have placed the obligation to ensure full disclosure on the debtor in possession, not the creditors.

Our conclusion that the Cleasbys failed adequately to disclose the existence of a potential lawsuit in their disclosure statement establishes that the first element of equitable estoppel-concealment-has been met in this case. The second element of equitable estoppel, that the facts must be known to the party estopped, is more easily met. The fact that the Cleasbys listed the potential lawsuit in the schedule of assets reveals that requisite knowledge was present. The third element, that the truth

10

concerning these facts must be unknown to the party claiming estoppel, is established through the absence of disclosure in the bankruptcy proceeding. As previously noted, the disclosure statement is the method to provide creditors such as Security Federal with pertinent knowledge. That disclosure was not made, and there is no allegation that any other means was provided by the Cleasbys.

The fourth element of equitable estoppel requires that the conduct must be done with the intention, or at least the expectation, that it will be acted upon by the other party. We find this element is satisfied by the very purpose of the disclosure statement, which is to provide creditors with the necessary information to approve or disapprove the bankruptcy plan. The fifth element is that the conduct must be relied upon by the other party. This requirement, also, is met. Security Federal relied upon the Cleasbys' bankruptcy plan when Security Federal agreed to settle all claims against the Cleasbys. Lastly, it must be shown that the party seeking estoppel changed its position to its detriment. In this case, Security Federal agreed to a restructuring of its debt which provided more beneficial terms to the Cleasbys. By rewriting the debt, Security Federal changed its position to its detriment.

Each of the elements of equitable estoppel is present in this case. Therefore, we affirm the District Court's conclusion that the Cleasbys are now estopped from bringing those claims in District Court.

## II.

Whether the Cleasbys' claim is barred by the doctrine of res judicata.

We need not address the issues of res judicata, since we have already found that the Cleasbys are barred from bringing their District Court claims through equitable estoppel.

Accordingly, we affirm the District Court's order that the Cleasbys are equitably estopped from pursuing their claims in District Court.

_____
John C. Sheehy
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

Justice Diane G. Barz did not participate.